UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TINA M. ANDERSEN,

                        Plaintiff,              09-CV-6259

              v.                                **DECISION
                                                and ORDER**
ROCHESTER CITY SCHOOL DISTRICT,

                        Defendant.
_____

## INTRODUCTION

Plaintiff, Tina M. Andersen ("Plaintiff"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and 42 U.S.C. § 1983, alleging gender discrimination, retaliation for engaging in a protected activity, and violations of the Equal Protection Clause and the First Amendment.  Plaintiff specifically claims that the Defendant, the Rochester City School District ("Defendant" or the "District"), discriminated against her on the basis of her gender by failing to take remedial action following several incidents between the Plaintiff and a student, and with respect to rumors that were circulated within the school about the Plaintiff.  Plaintiff also claims that she was constructively discharged because of the District's failure to remedy this allegedly hostile work environment.

Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), arguing that the

evidence is insufficient to support Plaintiff's claims. Plaintiff opposes Defendant's motion, arguing that she has established a prima facie case on all of her claims and that there are material issues of fact. For the reasons set forth below, this Court grants Defendant's Motion for Summary Judgment in its entirety. Accordingly, Plaintiff's Complaint is hereby dismissed with prejudice.

## BACKGROUND

The following facts are taken from the record and the parties submissions pursuant to Local Rule 56.1. See Docket Nos. 11, 15 and 17. The District hired plaintiff in 2000 as a general music and choir teacher. During the relevant time period, Plaintiff worked at the Wilson Foundation Academy ("Wilson"), teaching general music and choir to middle and high school students.

In December 2006 and January 2007, an eighth-grade student at Wilson, Malcolm Reid ("Reid"), who lived in Plaintiff's neighborhood, broke into Plaintiff's home and vandalized her property. Reid also stole personal property from Plaintiff's home, including her cell phone, during the second break-in. Plaintiff attempted to call the cell phone from her home phone, but no one answered. Later, a male caller (later identified as Reid) called Plaintiff's home phone and made a sexually explicit comment to her, asking her (in vulgar terms) if she was having sex with her boyfriend. Plaintiff immediately hung up the phone. The male

caller called Plaintiff's home phone a second time, but a police officer who was at the residence investigating the break-in answered the phone.  At this point, neither Plaintiff nor the police knew that Reid was the male caller or the person who broke into her home.

Later, on January 25, 2007, the same male caller called Plaintiff's boyfriend and left a sexually explicit message on his phone.  The caller inquired (also in extremely vulgar terms) about the Plaintiff's sexual relationship with her boyfriend.  Plaintiff retrieved the incoming phone number, and the police identified the male caller's cell phone, which belonged to Reid.  The police then informed the Plaintiff that Reid was a student at Wilson, however, Plaintiff was unaware at that time that Reid attended Wilson and he was not a student in her class.  She never had contact with Reid at school, but she knew him from the neighborhood.

In late January, Plaintiff informed the Rochester Teacher's Association ("RTA") and the Lead Principal of Wilson, Barbara Hassler, that Reid, a student at Wilson, was suspected of breaking into her home and making sexually explicit calls to her and her boyfriend.  Hassler asked Plaintiff what she wanted the school to do about the situation, and Plaintiff responded that she would follow up with the school after Reid was arrested.  Plaintiff, accompanied by an RTA representative, again went to speak to Hassler about Reid's criminal behavior in early February, but Hassler told

Plaintiff to speak with the school resource officer a member of the Rochester Police Department ("RPD"), Officer Corridi, and Walter Larkin, the Assistant Principal for the eighth grade at Wilson.  The facts do not indicate that Plaintiff or Hassler spoke with Walter Larkin about the situation.

On February 28, 2007, Plaintiff, accompanied by an RTA representative and Officer Corridi, again went to speak with Hassler, but Hassler was unable to speak with the Plaintiff at that time.  Later that day, Plaintiff was instructed by the RPD to take extra precautions at work and at home.  Plaintiff felt unsafe at work, so she called the Vice Principal, Barbara Dunn, to tell her that she would not return to work "until this is resolved."  Dunn and a representative of the RTA both told the Plaintiff to take time off.  Plaintiff did not return to school for the rest of the school year. Plaintiff was paid for the remainder of the school year, but had exhausted all of her leave time by the end of the year.

While plaintiff was out of school, Plaintiff's co-workers and her boyfriend (who also worked at the school) reported to the Plaintiff that a rumor had circulated among several of the teachers and students that the Plaintiff was fired because she had a sexual relationship with a student and that she was a sexual deviant. Plaintiff was informed of four separate occasions during March and April 2007 in which such comments were overheard by her boyfriend and her co-worker friends.  Plaintiff testified that she told Dunn

that she had heard that rumors were circulating around school about her and the student, but she did not explain the content of the rumors in any detail. Plaintiff further reported the rumors to an RTA representative, who told her to ignore them.  Dunn claims that Plaintiff only "vaguely" referred to the rumors and that she had not personally heard the rumors.

Reid was not apprehended until March, when he was spotted "casing" Plaintiff's home. Plaintiff was able to voice identify Reid as the person who made the sexually explicit phone calls. Reid confessed to breaking into her home in December 2006 and January 2007, making the sexually explicit phone calls, "casing" her home and throwing a rock through the window in March 2007.  Reid was arrested for the crimes.

Plaintiff called Vice Principal Dunn to report that Reid had been arrested. Plaintiff testified that she informed the District that an Order of Protection was issued in her favor against Reid, but the District claims that it did not receive this information or a copy of the Order.  At that time, Reid remained a student at the school. Vice Principal Dunn testified that the District's policy with respect to Orders of Protection is to remove the violating party from the school, if both parties are present. However, Plaintiff did not return to work.  Reid, was placed in juvenile detention in late April.  Plaintiff again called Vice Principal Dunn

to inform her that Reid was incarcerated, but Plaintiff did not return to work.

During the summer, Plaintiff engaged in e-mail conversations with the RTA regarding the upcoming school year, however, Plaintiff had, at that point, already accepted a position in Chicago. Dunn testified that she attempted to contact Plaintiff several times to inquire whether she would be returning to work in September. Plaintiff responded by email that she would not return to work. Later, in November, Plaintiff sent a letter to the District stating that she had been "constructively discharged."

## DISCUSSION

Pursuant to Rule 56, a court may grant a motion for summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact." See Fed.R.Civ.P. 56(c). Once the movant has met this burden, the burden shifts to the nonmovant who must "come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001); Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986). The court must draw all factual inferences, and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Celotex Corp., 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if

there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007).

The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). The nonmovant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative." See Savino v. City of New York, 331 F.3d 63, 71 (2d Cir.2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citation omitted)). Rather, he must "set out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e)(2); See also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful.").

A. Hostile Work Environment[1]

Title VII forbids an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or

---

[1]Plaintiff's hostile work environment claims under the NYSHRL are analyzed under the same standards as federal Title VII claims. See Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 609 (citing Smith v. Xerox Corp., 196 F.3d 358, 363 n. 1 (2d Cir.1999); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714-15 (2d Cir.1996)).

privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. §2000e-2(a).  The Supreme Court has determined that Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult...that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted); see also Mack v. Otis Elevator Co., 326 F.3d 116, 123 (2d. Cir. 2003).

The test to determine whether plaintiff was the victim of a hostile work environment "has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (quoting Harris, 510 U.S. at 21).  The incidents of which a plaintiff complains "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Carrero v. New York City Housing Auth., 890 F.2d 569, 578 (2d Cir. 1989). The Court must look at the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether such conduct unreasonably interferes with the plaintiff's work performance. See Harris 510 U.S. at 23.

A plaintiff alleging that her employer violated Title VII by creating such a hostile work environment must show "[1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." Alfano, 294 F.3d at 373; see also Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766-7 (2d Cir. 1998).  With respect to non-employees, the District Courts in this Circuit have generally followed the standard for co-workers set forth in Quinn, which provides that an employer may be held liable for the conduct of a co-worker if there was no reasonable avenue for complaint or the employer knew of the conduct and did nothing about it. Id; See e.g. Peries v. New York City Bd. Of Educ., 2001 WL 1328921 (E.D.N.Y. 2001).  The Quinn Court did not specifically address the issue of non-employees, but it stated that the employer's duty with respect to non-employees "can be no greater than that owed with respect to co-worker harassment." Quinn, 159 F.3d at 766.

The Court in Peries specifically held that this standard was appropriate in the context of student-on-teacher harassment, particularly because school districts can exercise authority over students in a way that is similar (if not greater) to the authority they have over their employees. See Peries, 2001 WL 1328921 at *5-*6. Further, the Court found that, as the relationship between the

school district and the student is relevant in determining whether to hold the school district liable for a student's discriminatory conduct, the relationship between the student and the teacher who alleges such discrimination is also important, as teachers also generally have the ability to discipline students for inappropriate (or illegal) conduct. Id. This Court relies upon the reasoning in Peries, as it is applicable to the instant action.  Accordingly, Plaintiff may prevail on her hostile work environment claim for conduct of Reid and her co-workers if she can demonstrate (1) that a hostile environment existed and (2) that there was no reasonable avenue for complaint or that the District knew of the harassment and did nothing about it.

In the context of an claim for a hostile work environment, the conduct of a student outside of school is relevant only to the extent that the conduct actually creates a hostile work environment. The conduct of the student outside of school must be so egregious that it actually alters the conditions of the school environment. See Harris 510 U.S. at 21.  Further, while conduct that is physically threatening may add to the hostility of the work environment, Title VII protects individuals from discrimination on the basis of certain characteristics (gender, for example), and Plaintiff must demonstrate that the conduct alleged was discriminatory in nature, not just that it was violent or criminal. See 42 U.S.C. §2000e-2(a).

Plaintiff alleges that Reid's conduct and the conduct of her co-worker's created a hostile work environment, and that the Defendant knew about this conduct and did nothing about it. The evidence indicates, however, that Reid's conduct occurred outside of school. Plaintiff was unaware that Reid was a student at the school until after he was a suspect in the case. Reid was not a student in the Plaintiff's class, and there is no evidence that Plaintiff had any contact with Reid at the school, either before or after the crimes were committed. Other than the fact that the two parties were obligated to be in the same building during school hours (which was distressing to the Plaintiff), there is little evidence connecting Reid's conduct to the school environment.

Further, while this Court does not condone Reid's criminal conduct, Plaintiff has not shown that Reid actions were the result of gender discrimination. Plaintiff's claim for gender discrimination, with respect to Reid's conduct, relate to the sexually explicit phone calls he made to the Plaintiff and her boyfriend while they were at home. However, the fact that the phone calls were sexual in nature, does not, by itself mean that the phone calls were directed at the Plaintiff because of her gender. See Dellefave v. Access Temporaries, Inc., 2001 WL 25745, *7 (S.D.N.Y. 2001)(citing Nash v. New York State Executive Dep. Div. Of Parole, 1999 WL 959366, *9 (S.D.N.Y. 1999) ("[C]ourts have never held that workplace harassment is automatically discrimination because of sex

merely because the words used have sexual content or connotations....Instead, the harassment must have a distinctive adverse impact on the victim because of the victim's sex.")(internal quotations omitted)). Plaintiff has not presented evidence that would tend to show that Reid's harassing phone calls were directed at her because of her gender. While the calls were sexually explicit and vulgar, the nature and content of the phone calls does not indicate gender animus. The Plaintiff may have genuinely (and understandably) felt threatened by Reid's conduct, but the facts do not indicate that her fears were related to gender discrimination, or that a hostile environment <u>at the school</u> was created due to the isolated calls to her and her boyfriend while they were at home. Further, while the District could have communicated more effectively with the Plaintiff, to assure her that she would be safe at work, their failure to do so, under these circumstances, cannot be characterized as gender discrimination violating Title VII.

With respect to the rumors that Plaintiff was fired for having engaged in a sexual relationship with a student and that she was a sexual deviant, this Court also finds that the Plaintiff has not established a claim for gender discrimination. As noted above, comments of a sexual nature, even when such comments are abhorrent or vulgar, are not necessarily discriminatory, if the content of the comments is not in some way linked to the fact of the victim's gender. Courts have held that rumors regarding relationships in the

workplace alone may not form the basis for a gender discrimination claim, absent evidence that the content of such rumors evidences a gender animus. See Dellefave 2001 WL 25745 at *7; see also Pasqua v. Metropolitan Life Insurance Company, 101 F.3d 514 (7th Cir. 1996). The evidence does not indicate that the rumors were circulated by individuals evincing gender animus or that the content of the rumors was peculiar to the female sex; rather, they appear to be in response to Plaintiff's absence from work, and the idle (and immature) minds of her co-workers and students. It is also worth noting that the comments were made by both male and female employees and students. While Plaintiff understandably found the rumors humiliating, it does not automatically follow that they are indicative of gender discrimination. Cf. Nash, 1999 WL 959366 at *9 (rumors spread that Plaintiff was acting as a madam in a prostitution ring were sufficiently linked to her gender to establish a cause of action for a hostile work environment). Further, the record indicates that the "rumors" consist of four isolated comments (of which Plaintiff had third and fourth hand knowledge) that occurred over a short period of time, between March and April 2007. It does not appear that Plaintiff experienced such rumors before she left the school in late February or that the rumors persisted beyond the school year.

Therefore, this Court finds that the totality of the circumstances does not demonstrate that Plaintiff was subjected to

a hostile work environment because of her gender.  Accordingly, Plaintiff's hostile work environment claims under Title VII and the NYSHRL are hereby dismissed with prejudice.

### B. Retaliation

Plaintiff also contends that she was constructively discharged after complaining to the school district about Reid's conduct and the rumors circulating in the school and that this constructive discharge amounts to retaliation in violation of Title VII and the NYSHRL. See note 1, infra.  Plaintiff's retaliation claims are analyzed under the McDonnell Douglas burden-shifting framework. See McDonnell Douglass Corp. v. Green, 411 U.S. 792, 802 (1973).  Under this framework, Plaintiff must first establish a prima facie case of discriminatory retaliation by showing: (1) participation in a protected activity known to the Defendant; (2) an adverse employment action; and (3) a causal connection between the protected activity and adverse action. See Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006); Holt v. KMI-Continental, 95 F.3d 123, 130 (2d Cir. 1996), cert. denied, 1997 WL 71191 (May 19, 1997); Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995) (citations omitted). Once a plaintiff has established a prima facie case of discrimination, the defendant must articulate a legitimate, nondiscriminatory rationale for its actions. See Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  The burden then shifts to the plaintiff to demonstrate that the employer's

Page -14-

stated rationale is merely a pretext for discrimination and that discriminatory animous is the true reason for the defendant's actions. See McDonnell-Douglas Corp., 411 U.S. at 802; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000). This Court finds that Plaintiff has not established a prima facie case of discrimination, accordingly, her retaliation claims are dismissed.

First, to establish that the Plaintiff engaged in a protected activity, she must show that the District reasonably understood her complaints to be about discrimination in the workplace. See Brummel v. Webster Central School District, Transportation Department, 2009 WL 232789, *17-*18 (W.D.N.Y. January 29, 2009)(citing Int'l Healthcare Exchange, Inc., v. Global Healthcare Exchange, LLC, 470 F.Supp.2d 345, 357 (S.D.N.Y. 2007) (to be considered protected activity, the employee's complaint must put the employer on notice that discrimination prohibited by Title VII is occurring). Plaintiff complained to the District about the criminal conduct of Reid on several occasions, however, Reid's criminal conduct out-of-school, could not reasonably have alerted the District that gender discrimination was occurring in the workplace. Plaintiff's complaints to the District regarding Reid consisted of her calls and meetings in which she described Reid's criminal conduct, and informed the District that she would not return to work until "this

situation is handled."   There is no evidence that Plaintiff complained to the District of sexual harassment by Reid in the workplace, rather, she complained to the District that she felt uncomfortable attending school due to Reid's violent and criminal behavior.

With respect to the rumors circulating within the school, Plaintiff testified that when she spoke to Vice Principal Dunn she "vaguely" discussed the contents of the rumors. See Andersen Dep. at p.88. Plaintiff stated that she did not ask the District to do anything about the rumors, and it is clear from the record that she did not complain to the District that she believed (reasonably or not) that the rumors were the result of gender discrimination. Id. This Court does not find that Plaintiff's "vague" conversation with Dunn regarding the alleged rumors, which did not relate to Plaintiff's gender, constitutes a protected activity within the meaning of Title VII.

Nevertheless, even if Plaintiff could show that her complaints to the District amount to a protected activity within the meaning of Title VII, Plaintiff has not demonstrated that she was subjected to an adverse employment action.   Plaintiff claims that she was "constructively discharged" because the District did nothing to cure the allegedly hostile work environment.   However, failure to act, under these circumstances, is not considered an adverse employment action for the purpose of determining whether retaliation in

violation of Title VII has occurred. See Fincher v. Depository Trust and Clearing Corporation, 604 F.3d 712 (citing Thomlison v. Sharp Elecs. Corp., 2000 WL 1909774, *4 (S.D.N.Y. 2000) ("Affirmative efforts to punish a complaining employee are at the heart of any retaliation claim.")). Further, to establish a claim for constructive discharge, Plaintiff must show that "the employer's deliberate actions rendered the employee's work conditions so intolerable as to compel resignation." See Petrosino v. Bell Atlantic, 385 F.3d 210, 230 (2d Cir. 2004). "[W]here an employee has within her power the means to eliminate the added condition that purportedly renders her employment intolerable and fails to pursue that option, she cannot demonstrate that she was compelled to resign." Id. at 231-232.  In Petrosino, the Court found that the Plaintiff had adduced sufficient evidence to support her claim for a hostile work environment, but not her claim for constructive discharge because  she had not shown that "quitting was the only way to extricate herself from intolerable conditions." Id. (quoting Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1015 (7th Cir.1997)).

Plaintiff has not produced evidence to show that the District took deliberate actions that rendered her employment intolerable, rather, she claims that it simply took no action. Plaintiff has also not shown that her only option was to discontinue her employment with the district.  While this Court does not condone the District's inaction under these circumstances, this Court cannot conclude that

the District's failure to act rises to the level of a constructive discharge to support Plaintiff's retaliation claims.  Accordingly, her claims are hereby dismissed.

> C. § 1983 Claims

Plaintiff's brings two claims pursuant to § 1983, alleging violations of the First Amendment and the Equal Protect Clause. Defendant argues that Plaintiff's claim under the First Amendment must fail, because she has not demonstrated that she was retaliated against for engaging in speech that was a matter of public concern. This Court agrees. See Saulpaugh v. Monroe County Community Hosp., 4 F.3d 134, 143 (2d Cir. 1993)("Initially, we note that [Plaintiff] has failed to state a claim under the First Amendment. According to the Supreme Court in Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983), 'when an employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.' Had [Plaintiff]'s complaints to her supervisors implicated system-wide discrimination they would have unquestionably involved a matter of 'public concern.')(and citing cases)). Here, Plaintiff's complaints to the District were related only to her personally, and did not suggest that system-wide discrimination was occurring.  Plaintiff

argues that the involvement of the RPD in her case transforms her complaints to matters of public concern.  However, the fact that Plaintiff called spoke with the RPD on several occasions regarding the criminal conduct of Reid and the fact that he was not removed from the school does provide evidence for Plaintiff's claim that she was speaking out about a system-wide policy of discrimination at the school.  See Ruotolo v. City of New York, 514 F.3d 184, 189-90 (2d Cir. 2008)(where a Plaintiff's primary goal is to redress personal grievances, the complaint will generally not fall within the protection of the First Amendment).  Further, the record does not indicate that Plaintiff ever spoke with the RPD regarding her allegations of sexual discrimination (which form the basis of her First Amendment claim), rather her contact with the RPD was solely with respect to the criminal case against Reid and her efforts to be granted an Order of Protection.  Accordingly, this Court finds that Plaintiff has not established a claim for retaliation in violation of the First Amendment.

Defendant also argues that Plaintiff has not established a claim under the Equal Protection Clause.  While not entirely clear, it appears from the Plaintiff's Memorandum of Law in Opposition to this Motion, that Plaintiff's Equal Protection claim is based on a District-wide policy to discriminate against female employees by failing to remedy the alleged hostile work environment.  Initially, this Court notes that allegations of a District-wide policy of

discrimination are absent from the Complaint, and the record does not contain evidence to support such a claim. Further, claims for gender discrimination brought under the Equal Protection Clause are analyzed under the same burden-shifting framework as Title VII claims, and "the elements of one are generally the same as the elements of the other and the two must stand or fall together." See Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004). Accordingly, as this Court has already determined that Plaintiff has not established a claim for gender discrimination based on a hostile work environment under Title VII, Plaintiff's Equal Protection claim must also be dismissed.

## CONCLUSION

For the reasons set forth above, this Court finds that the evidence is insufficient to support Plaintiff's claims for gender discrimination and retaliation under Title VII, § 1983 and the NYSHRL. This Court hereby grants Defendant's Motion for Summary Judgement in its entirety and Plaintiff's Complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/ Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          April 15, 2011